## Case No. 2,249.

### BUTTERFIELD et al. v. ARTHUR.

[16 Blatchf. 216; 25 Int. Rev. Rec. 248; 8 Reporter, 68.][1]

Circuit Court, S. D. New York. April 19, 1879.

CUSTOMS DUTIES — CALF-HAIR GOODS—"A MANUFACTURE OF COTTON."

"Calf-hair goods," made to imitate velvet or fur, manufactured of cotton and hair, the warp being cotton and the woof being cattle hair, is not dutiable at the rate of 30 per cent. ad valorem, as "a manufacture of hair, not otherwise provided for," under Schedule M, of section 2504 of the Revised Statutes, but is dutiable at the rate of 35 per cent. ad valorem, as "a manufacture of cotton, not otherwise provided for," under Schedule A, of said section 2504, by applying to it the provisions of section 2499 of the Revised Statutes.

[Cited in U. S. v. Sixty-Five Terra-Cotta Vases, 18 Fed. 510.]

[At law. Action by Frederick Butterfield and others against Chester A. Arthur, collector of the port of New York, to recover back duties alleged to have been illegally exacted. There was a verdict for plaintiffs, and defendant moves for a new trial.]

John Hallock Drake, for plaintiffs.

Stewart L. Woodford, Dist. Atty., for defendant.

WALLACE, District Judge. The plaintiffs, in November, 1874, imported into the port of New York certain merchandise invoiced as "calf-hair goods," upon which the defendant, as collector of the port, exacted a duty of thirty-five per centum ad valorem, it being claimed by the collector that the merchandise was dutiable as "a manufacture of cotton, not otherwise provided for," under Schedule A, of section 2504 of the Revised Statutes of the United States. The plaintiffs protested against the payment of the duty thus exacted, and now insist that their merchandise should have been classified as "a manufacture of hair, not otherwise provided for," and, as such, was subject to a duty of only thirty per centum ad valorem. This suit is brought to recover the difference between thirty-five and thirty per centum ad valorem. The provision of the

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 25 Int. Rev. Rec. 248, and 8 Reporter, 68, contain only a partial report.]

tariff acts upon which the plaintiffs found their claim is contained in Schedule M, of section 2504 of the Revised Statutes, by which duties are imposed as follows: "On hair-cloth known as crinoline cloth, and all other manufactures of hair, not otherwise provided for, thirty per centum ad valorem; of the description known as hair-seating, eighteen inches wide or over, forty cents per square yard; less than eighteen inches wide, thirty cents per square yard." The evidence shows that the plaintiffs' importation is a fabric made to imitate velvet or fur, manufactured of cotton and hair, the warp being cotton and the woof being cattle hair. It is used for making caps, cloaks and outside garments. It is known in the trade under the general name of "cow or calf-hair goods," or as "velour," "imitation seal skin," &c., &c. "Crinoline cloth" is made of cotton and hair, the long hair from the tail or mane of the horse being woven into a cotton warp. The width of the cloth is governed by the length of the hair used; and it is used for ladies' underwear. "Hair-seating" is a similar fabric to crinoline cloth, the only difference being that it is more closely woven; and it is used mainly for upholstering purposes. If the plaintiffs' article was a manufacture of hair, within the meaning of the act in question, it was an enumerated article, and the collector had no right to apply the provisions of section 2499 of the Revised Statutes. That section enacts, that, on all articles manufactured from two or more materials, the duty is to be assessed at the highest rates at which any of its component parts may be chargeable; but that section only applies to non-enumerated articles. It affords a rule of construction by which articles not otherwise enumerated may be ranged under the proper classification.

It is insisted, for the plaintiffs, that, because their article derives its main value and peculiar character from the hair of which it is in part composed, it is to be deemed a manufacture of hair. This position cannot be maintained. Their article is no more a manufacture of hair than of cotton, and the tariff acts are provided with a rule of construction by which the classification of all articles shall be ascertained which are non-enumerated, and which furnishes the only guide in cases like this. If a duty were imposed simply upon all manufactures of hair, the plaintiffs' case would not be sufficiently plausible to require discussion. But, in the same paragraph in which duties are imposed on "all other manufactures of hair," a duty is imposed on crinoline cloth and hair-seating—articles which are not manufactures of hair, but of hair and cotton. Thus, both crinoline cloth and hair-seating are dealt with as manufactures of hair; and this affords support to the argument, that by the term "other manufactures of hair," congress did not mean manufactures of which hair is the exclusive component. This

argument is well advanced, but it is not sufficient for the purposes of the plaintiffs' case. Where a general descriptive term is employed in a statute, in connection with words of particular description, the meaning of the general term is to be ascertained by a reference to the words of particular description. Applying that rule here, the general words, "all other manufactures of hair," will be construed to cover all such other manufactures of hair as are similar to crinoline cloth and hair-seating, although they may contain cotton or other components. They will not include, however, such manufactures as are not reasonably suggested by those specifically described. In other words, they will be construed to mean, such other manufactures as are similar to the particular articles which were the subject of legislative consideration. The only similarity between the plaintiffs' importation and crinoline cloth or hair-seating consists in the fact, that all of them are made of both cotton and hair. It follows, that the article imported by the plaintiffs is not an enumerated article and was properly classified under the cotton section. The case of Arthur v. Sussfield, 96 U. S. 128, cited for the plaintiffs, was one where the article was an enumerated one. There, spectacles made of steel and glass were in controversy. One provision of the tariff acts imposed a duty on all manufactures of which steel was a component part, and another upon all manufactures of which glass was a component part. The article was thus not non-enumerated, but was enumerated twice, because, both steel and glass were component parts of it. But, the intention to impose the glass duty instead of the steel duty was found by applying the maxim, noscitur a sociis, it being imposed upon pebbles for spectacles and all manufactures of which glass was a component part.

Reference has been made, in the argument, to the provisions of the prior tariff acts, as bearing upon the construction of the act in question. In regard to these acts, it is sufficient to say, that they do not strengthen the position of the plaintiffs. By the act of March 2, 1861, § 21 (12 Stat. 190), duty is imposed "on hair-cloth and hair-seatings and all other manufactures of hair," and, by the act of July 14, 1870, § 21 (16 Stat. 264), to reduce duties, the duty is decreased "on hair-cloth, of the description known as hair-seating." Under this phraseology, hair-cloth is described as a manufacture of hair, and seems to have been distinguished from hair-seating, and described by a commercial designation; and, because of this, upon the trial, I was inclined to hold that hair-cloth should be included, in the present section, as a "manufacture of hair," and left it to the jury to find whether or not the plaintiffs' importation was an article commercially known as hair-cloth. This, I am satisfied, was an error, because, the section as it now

stands, furnishes quite clear evidence of the legislative intent to reduce the duty upon those manufactures of hair which are ejusdem generis with crinoline cloth and hairseating, and upon none other.

A verdict should have been directed, upon the trial, for the defendant. It was error to leave the case to the jury, and, for this reason, a new trial is granted.