UNITED STATES *v.* SIXTY-FIVE TERRA-COTTA VASES, etc.

*(Circuit Court, S. D. New York.   November 16, 1883.)*

1. CONFLICTING STATUTES—REPEAL.

A later statute, so repugnant to a former one that the two cannot stand together, repeals it by implication.

2. PRE-EXISTING LAWS—TO EXPLAIN DOUBTFUL LANGUAGE.

Only when doubtful language is used in the Revised Statutes can resort be had to pre-existing laws to ascertain its meaning. Resort cannot be had to see if congress erred in the revision.

3. CONSTRUCTION OF STATUTE—GENERAL AND RESTRICTIVE CLAUSES.

Section 2505 of the Revised Statutes declares that, among other articles, "cabinets of coins, medals, and all other collections of antiquities," and "collections of antiquity especially imported, and not for sale," shall be exempt from duty. *Held*, to give effect to the second clause, only such collections are embraced in the first clause as are *ejusdem generis* with coins and medals.

On Writ of Error.

*Elihu Root,* U. S. Atty., for the United States.

*Coudert Bros.,* proctors for claimant.

WALLACE, J. This writ of error is brought to review a judgment of the United States district court for the southern district of New York dismissing the libel of information. The suit was brought to condemn certain terra-cotta vases, Etruscan vases, stone images, spears, lances, and other articles, because of their alleged fraudulent entry upon importation by the owner to avoid the payment of duties. The evidence, in connection with the admissions of the pleadings, tended to show that the imported articles were a collection of antiquities imported by one De Morgan for sale, but that he represented in the invoice used upon the entry of the articles that they were a private collection, and were not imported for sale, and that the representation was false, in that they were imported to be sold. The judge ruled upon the trial that the imported articles were exempt from duty, and that as they were not dutiable there was no legal.

fraud in the attempt to evade the payment of duties, and he therefore directed a verdict for the owner.

Whether the articles were exempt from the payment of duties or not depends upon the construction and effect to be given to two clauses of section 2505 of the Revised Statutes of the United States. That section declares that certain designated articles shall be exempt from duty, among which, in distinct clauses, are "cabinets of coins, medals, and all other collections of antiquities," and "collections of antiquity specially imported and not for sale." The court held that, as the articles in suit were a collection of antiquities, they fell within the first clause. It was insisted for the government that only such collections are within the meaning of that clause as are *ejusdem generis* with coins and medals, and, as the articles in suit were not of this description, they were dutiable. It is impossible to give any effect to the second clause unless this position is correct.

The learned district judge, in his opinion delivered at the trial, reviewed the provisions of the tariff acts on the subject which had been enacted prior to the revision of the statutes, and was controlled in his conclusions by the fact that the first clause had existed from 1846 until 1870, and the second was first enacted by the act of July 14, 1870; and as this later act was designed to extend the free-list, it did not, in his opinion, afford a sufficient indication of a purpose to restrict the provision of the former act to have that effect. It seems to have been overlooked that in the tariff act of 1861 there was a proviso that is material in this aspect of the question. Among the articles declared exempt by that act are, in one clause, "cabinets of coins, medals, and all other collections of antiquities;" and, in another clause, "all collections of antiquity, provided the same be specially imported by any society * * * for the encouragement of the fine arts." When the act of 1870 was passed, therefore, "all collections of antiquity "were not unconditionally upon the free-list." That act limited the proviso of the act of 1861, so that the collections of antiquities which had theretofore been exempt only when specially imported by societies, were thenceforth exempt when imported by any person "not for sale." Thus the act of 1870 enlarged the free-list, instead of restricting it. The district judge treated the question as though congress in one act had exempted all collections of antiquities from duty, and in a subsequent act, which was designed to extend the free-list, had exempted all such collections when specially imported and not for sale. If this were a correct view, it would seem difficult to maintain that the later act was not a repeal of the former. A later statute, so repugnant to a former one that the two cannot stand together, repeals it by implication. The two here could not possibly be reconciled; because, if the former stood, the latter could have no operation whatever. If every collection of antiquities was already exempt, the limitation prescribed by the later act had nothing to which it could attach. Some effect must have been intended and

must be given to the language employed.    It will not do to say it was meaningless, or that it was employed inadvertently, simply because it conflicts with an entire law, or because it may withdraw a particular case from the general operation of the act.    But, as has been seen, the particular provision of the later act was not inconsistent with the general scope and design of the legislation.

The Revised Statutes must be considered as the legislative declaration of the statute law on the subjects which they embrace on the first day of December, 1873, and it is only when the language employed in the revision is doubtful that resort can be had to the pre-existing laws to ascertain its meaning.    *U. S.* v. *Bowen,* 100 U. S. 508; *Vietor* v. *Arthur,* 104 U. S. 498.    It cannot be had to see if congress erred in the revision.    *Arthur* v. *Dodge,* 101 U. S. 34, 36. Applying the accepted canons of interpretation which require every part of an act to be taken into view for the purpose of discovering the legislative intent, and which restrict general expressions whenever necessary to make all the parts harmonize and give an intelligible effect to each, it seems quite clear that the section in question does not exempt all collections of antiquities from the payment of duty.    In dealing with the whole free-list, the section exempts many articles from duty unconditionally, and others conditionally.    If the description of the articles specified is such as to distinguish them each from the other, there is no difficulty in determining to which the conditions apply, and to which they do not.    If there had been in the section only the single description of antiquities under the classification of "cabinets of coin, medals, and all other collections of antiquities," it might be forcibly urged that only such collections are exempt as are assimilated to coins and medals in their general characteristics.    Nearly 50 years ago it was stated by Mr. Justice Story (*Adams* v. *Bancroft,* 3 Sumn. 384, 386) that "one of the best-settled rules of interpretation of laws of this sort is that the articles grouped together are to be deemed to be of a kindred nature and of kindred materials unless there is something in the context which repels that inference.    *Noscitur a sociis* is a well-founded maxim, applicable to revenue as well as to penal laws."    The rule was stated in different language in *Butterfield* v. *Arthur,* 16 Blatchf. 216, as follows:

"When a general descriptive term is employed in a statute in connection with words of particular description, the meaning of the general term is to be ascertained by a reference to the words of particular description."

This rule of construction has been judicially declared so frequently and so consistently, that it is as much incorporated into a revenue law as though it were expressly embodied in it.    But when, following this particular description, the same section subsequently describes collections of antiquities comprehensively, and declares that they are to be exempt conditionally, the distinction in the contemplation of congress, between collections generally and collections of a particular class, seems clearly defined.    It is only upon this assumption that

any meaning can be given to the later clause, and that effect can be given to all parts of the section. No collections of antiquity could be exempt when "imported specially and not for sale," if all collections, under all circumstances, were already exempt. Upon any other construction it would appear that congress, after exempting all antiquities, had proceeded in the same section of a law to revoke what it had already declared, by exempting them only upon specified conditions. The limitation or exception is in the nature of a proviso, concerning which it is affirmed that when it is repugnant to the main body of the act, the proviso shall stand and be held a repeal of the purview, as it speaks the last intention of the makers. Sedg. St. Law, 62.

As the articles in suit were not exempt from duty, it is unnecessary to consider whether, if they had been exempt, an intent to defraud the United States could not be predicated upon a false statement made by the importer with intent to mislead the customs officers, and which might lead them to forego any examination of the property, or to assert the right to a duty in a doubtful case.

The judgment is reversed.