INGERSOLL et al. v. MAGONE.

(Circuit Court of Appeals, Second Circuit. February 7, 1893.)

CUSTOMS DUTIES—TRAVELING RUGS.
    Traveling rugs imported during the year 1888, were dutiable at 40 per cent. ad valorem, as rugs, under paragraph 378, Schedule K, of the tariff act of March 3, 1883, (22 St. at Large, p. 510,) and not at 35 cents per pound and 40 per cent. ad valorem, as manufactures of wool not specially enumerated, under paragraph 362, Schedule K, of that act. 48 Fed. Rep. 159, reversed.

In Error to the Circuit Court of the United States for the Southern District of New York.

At Law. Action by David B. Ingersoll and William P. Glenney against Daniel Magone to recover an alleged excess of customs duties levied by defendant as collector of the port of New York. The circuit court directed a verdict for defendant. 48 Fed. Rep. 159. Plaintiffs bring error. Reversed.

Edward Hartley, for plaintiffs.

Thomas Greenwood, Asst. U. S. Atty., for defendant.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an action at law for the recovery of $60.67, the amount alleged to have been paid, under protest, as an excess of duties upon a certain importation made into the port of New York. In September, 1888, the plaintiffs imported certain goods, described in the invoice which was presented on entry as "rugs," which the defendant classified for duty as woolen shawls, upon which he, as collector of the port, collected duty under paragraph 362 of Schedule K of the act of March 3, 1883, (22 St. at Large, p. 508.) The paragraph is as follows:

"Woolen cloths, woolen shawls, and all manufactures of wool of every description, made wholly or in part of wool, not specially enumerated or provided for in this act, valued at not exceeding eighty cents per pound, thirty-five cents per pound, and thirty-five per centum ad valorem; valued at above eighty cents per pound, thirty-five cents per pound, and, in addition thereto, forty per centum ad valorem."

The importers protested upon the ground that the goods were bought and sold as rugs, and were used as rugs or robes for the protection of the person in carriages, and for house purposes, and were dutiable only under paragraph 378 in Schedule K of the act of March 3, 1883, which paragraph is as follows:

"378. Carpets and carpetings of wool, flax, or cotton, or parts of either or other material, not otherwise herein specified, forty per centum ad valorem; and mats, rugs, screens, covers, hassocks, bedsides, and other portions of carpets or carpetings, shall be subjected to the rate of duty herein imposed on carpets or carpeting of like character or description; and the duty on all other mats not exclusively of vegetable material, screens, hassocks, and rugs, shall be forty per centum ad valorem."

The goods were made of wool, and were of the same general character as the two samples, which were described as follows:

"One was 5 feet long by 5 feet and 2 inches wide, weighing 4 pounds 12 ounces, with fringe at each of the two ends, and presenting on one side a bright-colored, striped appearance, and on the reverse side a twilled appearance, in two colors. The other was 6 feet and 2 inches long by 5 feet and 2 inches wide, weighing 3 pounds and 6 ounces, without fringe, bound on all its edges with a binding, and presenting a dull appearance, alike, or nearly alike, on both sides."

The record shows that this class of goods is used for wrapping about the legs or the body of a person when traveling, and as coverings for lounges or beds, and for throwing over the body of a person when lying on a lounge or bed, and that these articles are, and were prior to March, 1883, bought and sold by the name of "traveling rugs." At the close of the plaintiffs' testimony the defendant moved the circuit court to direct the jury to find a verdict for the defendant, upon the ground that the articles in suit are not the rugs mentioned in the paragraph which has been quoted. This motion was granted by the court, and a verdict for the defendant was rendered. The plaintiff having excepted to the ruling, the question as to its propriety comes to this court by writ of error.

The provisions already quoted, of the tariff act of 1883, in regard to mats, screens, and rugs, have existed, in substantially the same language, with the exception of the limitation respecting mats not exclusively of vegetable material, and in the same connection with provisions for, carpeting, since the act of March 2, 1861, (12 St. U. S. p. 184,) and have been repeated in the acts of July, 1862, (12 St. U. S. p. 552,) of June 30, 1864, (13 St. U. S. p. 207,) and of March 2, 1867, (14 St. U. S. p. 562.)

Since 1859, when the question arose in regard to the classification of traveling rugs, as between "blankets" and "manufactures of wool," the proper classification of these articles has been occasionally the subject of discussion in the treasury department. In 1866 and 1869 the department decided that they should be classified as manufactures of wool not otherwise provided for. A similar decision seems to have been made in 1870. In 1888 the department decided to modify its previous rulings, and to concede that these articles should be classed as rugs, upon the ground that they were such both under the comprehension' and the commercial significations of the word. The only testimony in the record in regard to commercial designation, and which was given for the purpose of distinguishing the importations from shawls, was from a witness who said that they were always and prior to March, 1883, bought and sold by the name of "traveling rugs," and that he had never heard them called "shawls."

The word "rug" is defined in Webster's Dictionary (Ed. 1875) to be "a coarse, nappy, woolen fabric used for various purposes, as (a) for cover of a bed; (b) for protecting the carpet before a fire; (c) for protecting the legs against the cold in riding, as, a railway rug." The testimony in the record that the importations were used both for the coverings of a bed, and for the protection of the person when traveling, coincides with the definitions of the word "rug" in this edition of the dictionary. The leading argument in favor of the collector's classification, and which met the approval of the circuit judge, is that the fact that rugs having been uniformly placed in the tariff acts since 1861, in connection with provisions for carpets and carpeting and articles used on floors, and the principle of noscitur a sociis, show the intent of congress to limit the meaning of the term "rug" to articles of a character akin to carpets or mats; but it must be observed that screens, which are not used as a covering, and which are not akin to carpeting, were also included in the same paragraph. Inasmuch as the word "rug". had gradually come to acquire a meaning which included a woolen fabric, either when used for protecting a carpet or for protecting the person, so that the authors of a standard dictionary published in this country in 1875 defined the word accordingly, and the article was in common use under the distinguishing name of "traveling rug," we think the fair inference to be that congress, in 1883, intended to use the word in the meaning which it had previously fully attained.

The judgment of the circuit court is reversed.