WIEBUSCH & HILGER, Limited, v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 7, 1898.)

No. 52.

CUSTOMS DUTIES — INTERPRETATION OF LAWS — CLASSIFICATION — MEASURING TAPES.

The tariff act of 1883 provides, in paragraph 334, for "brown and bleached linens, ducks, canvas, * * * handkerchiefs, lawns, or other manufactures of flax, jute, or hemp, * * * not specially enumerated or provided for." Paragraph 336 provides for "flax or linen thread, twine, and pack thread, and all manufactures of flax * * * not specially enumerated or provided for." *Held*, that these paragraphs were to be construed by the rule of "noscitur a sociis," so as to confine the concluding general descriptive terms to articles of like kind with those enumerated; that the former paragraph was therefore confined to woven fabrics capable of being measured by the square yard, and the latter to spun and twisted goods; and, hence, that the former covered measuring tapes mounted for use, which were woven with a warp and filling, in complete widths, with selvages.

This is an appeal from a decision of the circuit court, Southern district of New York, affirming a decision of the board of general appraisers which reversed a decision of the collector of the port of New York. 78 Fed. 807.

The articles in question are measuring tapes, mounted for use. The tapes are woven with a warp and filling, in complete widths, with selvages, and are not spun or twisted. After the weaving, the surfaces are treated with paint, or similar composition, and marked with letters and figures. They are then rolled up in leather cases, with metal adjuncts. The collector classified them under paragraph 216 of the tariff act of 1883, as manufactures in part of metal. It appears that flax is the component material of chief value, and for that reason the board reversed the collector; their decision being, to that extent, acquiesced in by both sides. The board (and the circuit court) held that the articles were dutiable under paragraph 336. The importer claims that they are covered by paragraph 334.

Everit Brown, for appellant.

Jas. T. Van Rensselaer, for the United States.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The two paragraphs in question are as follows:

"334. Brown and bleached linens, ducks, canvas, paddings, cot-bottoms, diapers, crash, huckabacks, handkerchiefs, lawns, or other manufactures of flax, jute, or hemp, or of which flax, jute, or hemp shall be the component material of chief value, not specially enumerated or provided for in this act, thirty-five per centum ad valorem."

"336. Flax or linen thread, twine, and pack thread, and all manufactures of flax, or of which flax shall be the component material of chief value, not

specially enumerated or provided for in this act, forty per centum ad valorem."

The tariff act of 1883 provided that, if two or more rates of duty are applicable to any imported article, it shall be classified for duty under the highest of such rates. Each paragraph above quoted contains a provision for "manufactures of which flax shall be the component material of chief value, not specially enumerated or provided for," and there is no more specific enumeration or designation of these measuring tapes contained in the act. It was therefore held in the circuit court, upon the authority of Dieckerhoff v. Robertson, 40 Fed. 568, that both rates of duty were applicable, and that the question as to which rate should prevail must be settled by the provision as to highest rate of duty above referred to. Dieckerhoff v. Robertson (which was decided by the writer of this opinion) is undoubtedly authority for that proposition,—the articles in that case being measuring tapes of flax, but not mounted as these are; but it is not controlling authority in this court, being a decision of the circuit court upon a jury trial which was never reviewed. A more careful consideration of the question leads this court, upon consultation, to a different conclusion. Past experience has shown, as might well be expected, that in statutes as long, detailed, comprehensive, and intricate as are the tariff acts, there will be found, not only awkward and obscure sentences, but also errors, inconsistencies, contradictions, and duplications. Nevertheless, it is hardly to be expected that in two paragraphs, standing almost in juxtaposition, different rates of duty should, by the use of precisely the same descriptive phrase in each paragraph, be made applicable to the same articles. If it be possible, under well-settled canons of interpretation, to construe the phrase, "manufactures of which flax shall be the component material of chief value," so as to cover different articles, when used in the 40 per cent. paragraph, from those which the same phrase covers when used in the 35 per cent. paragraph, this should be done. Each paragraph, it will be observed, contains an enumeration of articles denominatively named, and between the two groups thus separately enumerated there is an easily recognizable distinction. The "linens, ducks, canvas, paddings, cot-bottoms, diapers, crash, huckabacks, handkerchiefs, and lawns" are all woven with warp and filling. They are all articles capable of being measured by the square yard, and sometimes, in former tariff acts, were subjected to a duty per square yard. The "thread, twine, and pack thread," on the contrary, are all spun and twisted, but not woven. They are not capable of measurement for a square-yard duty, and have never been thus assessed. This separation of manufactures of flax into groups of woven goods and of spun and twisted goods is not a novel arrangement. It is found in the act of March 2, 1861, § 14; in the act of June 30, 1864, § 7; and in Rev. St. § 2504, p. 462. And in these earlier acts, after the denominative enumeration, alike in the "woven" group and in the "spun and twisted" group, appears the same general description, "other manufactures of which flax shall be the component of chief value." It is reasonable to infer that congress meant in each case to cover "other manufactures" of like character to those denominatively named in the specific enumeration.

"Nearly fifty years ago it was stated by Mr. Justice Story (Adams v. Bancroft, 3 Sumn. 384, 386, Fed. Cas. No. 44) that 'one of the best-settled rules of interpretation of laws of this sort is that the articles grouped together are to be deemed to be of a kindred nature and of kindred materials, unless there is something in the context which repels that inference. "Noscitur a sociis" is a well-founded maxim, applicable to revenue as well as to penal laws.' The rule was stated in different language in Butterfield v. Arthur, 16 Blatchf. 216, Fed. Cas. No. 2,249 as follows: 'When a general descriptive term is employed in a statute in connection with words of particular description, the meaning of the general term is to be ascertained by a reference to the words of particular description.' This rule of construction has been judicially declared so frequently and so consistently that it is as much incorporated into a revenue law as though it were expressly embodied in it." U. S. v. Sixty-Five Terra-Cotta Vases, 18 Fed. 508, 510. In Manufacturing Co. v. Worthington, 132 U. S. 654, 10 Sup. Ct. 180, the supreme court held that certain show cards, consisting of thin sheet iron, on which the name of the person or of the article advertised, and some picture or ornament, were printed by lithographic process, "were not 'printed matter,' within the meaning of the clause relied on by the plaintiff, because those words, as there used, applied only to articles ejusdem generis with books and pamphlets, which iron show cards were not." The paragraph referred to in that case reads, "Books, pamphlets, bound or unbound, and all printed matter, not specially enumerated or provided for, etc." In opposition to the application of such a rule of construction in the case at bar, two authorities are cited. Arthur's Ex'rs v. Butterfield, 125 U. S. 70, 8 Sup. Ct. 714, and Ingersoll v. Magone, 4 C. C. A. 150, 53 Fed. 1008. In the first of these the paragraph construed read as follows:

"On hair cloth of the description known as hair-seating, eighteen inches wide or over, forty cents per square yard; less than eighteen inches wide, thirty cents per square yard. On hair cloth known as crinoline cloth, and on all other manufactures of hair not otherwise provided for, thirty per centum ad valorem."

The supreme court held that the phrase, "all other manufactures of hair not otherwise provided for," should not be restricted to other manufactures like those enumerated in the same section, viz. crinoline cloth or hair-seating. In the tariff act then under discussion, however, there was no other provision for "manufactures of hair"; and consequently there was no apparent necessity for a construction which would avoid inconsistencies, and thus find in the act, considered as a whole, a harmonious tariff. In the opinion of this court in Dodge v. U. S. (handed down at this session) 84 Fed. 449, will be found a statement of the reasons for restricting our former opinion in Ingersoll v. Magone to the facts then before the court, and which are not found in the case at bar. The appellant's goods, therefore, being woven with warp and filling, and not spun or twisted, are dutiable under paragraph 334, and not under paragraph 336. The decision of the circuit court is reversed.