UNITED STATES *v.* MARSCHING (No. 124).   UNITED STATES *v.* DRAKENFELD (No. 125).   MARSCHING *v.* UNITED STATES (No. 168).   DRAKENFELD *v.* UNITED STATES (No. 169).[1]

1. STATUTORY INTERPRETATION.
     Any provision of a law must be read in the light of all the other provisions of that law, and in a tariff law the language used must be interpreted in view of the conditions of commerce existing when the statute was enacted.

2. IBID.
     But where the essential words that support a construction contended for have been in a later enactment expressly omitted by the Congress, the omitted words may not be, by any rule or method of construction, restored in the terms of the law.

3. ENAMEL OR CERAMIC COLORS.
     Enamel or ceramic colors containing no quicksilver were dutiable at 5 cents the pound, under paragraph 54, tariff act of 1897.

United States Court of Customs Appeals, January 25, 1911.

CROSS appeals from decisions of Board of United States General Appraisers (T. D. 30529).

[Affirmed.]

*D. Frank Lloyd*, Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.
     *Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellants and appellees in cross appeals.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:
     This was an importation of ceramic or enamel colors used for decorating china ware and to impart a white glaze to glass.   Assessment

[1] Reported in T. D. 31257 (20 Treas. Dec., 182).

for dutiable purposes was made at the rate of 30 per cent ad valorem under paragraph 58 of the tariff act of 1897, which provides:

Par. 58. All paints, colors, pigments, lakes, crayons, smalts and frostings, whether crude or dry or mixed, or ground with water or oil or with solutions other than oil, not otherwise especially provided for in this Act, thirty per centum ad valorem; * * *

The material contention of the importers, in the view of the court, is that paragraph 54 of that tariff act is the applicable one, which is as follows:

Par. 54. Vermilion red, and other colors containing quicksilver, dry or ground in oil or water, ten cents per pound; when not containing quicksilver but made of lead or containing lead, five cents per pound.

Paragraph 55 is also invoked, but in our view of the case consideration of its provisions is unnecessary.

The Board of General Appraisers reversed the decision of the collector and sustained the protest of the appellant upon the grounds that the portion of the merchandise that did not contain quicksilver was dutiable at 5 cents per pound under the last provision of paragraph 54.

Counsel for the Government seeks to controvert this conclusion and relies in support of that position, first, upon the asseveration that the last provision of paragraph 54, following the semicolon, applies only to "vermilion red," and that it is not predicated of the words "other colors" occurring in the portion of the paragraph preceding the semicolon. It is further contended by the Government that paragraph 54 relates only to such colors or vermilion red as either contains quicksilver or is practically and commercially susceptible of being made from quicksilver.

A quotation of the paragraphs in pari materia in previous tariff acts and the act of 1909 is instructive.

Act of 1890:

Par. 57. Vermilion red, and colors containing quicksilver, dry or ground in oil or water, twelve cents per pound.

Act of 1894:

Par. 45. Vermilion red, and other colors containing quicksilver, dry or ground in oil or water, twenty per centum ad valorem; vermilion red, not containing quicksilver but made of lead or containing lead, six cents per pound.

Act of 1897:

Par. 54. Vermilion red, and other colors containing quicksilver, dry or ground in oil or water, ten cents per pound; when not containing quicksilver but made of lead or containing lead, five cents per pound.

Act of 1909:

Par. 52. Vermilion reds, containing quicksilver, dry or ground in oil or water, ten cents per pound; when not containing quicksilver but made of lead or containing lead, four and seven-eighths cents per pound.

It will be noted that the act of 1890, paragraph 57, provided for "vermilion red, and colors containing quicksilver"; that the act of 1894, paragraph 45, while providing for "vermilion red, and other colors containing quicksilver" added a provision for "vermilion red, not containing quicksilver but made of lead or containing lead." The provision for merchandise not containing quicksilver was expressly predicated of "vermilion red" and naturally did not in terms extend to "other colors."

Congress, however, in the act of 1897 dropped the subject "vermilion red" from the second provision of the paragraph, and in the first part of the paragraph 54 of that act provided for "vermilion red *and other colors* containing quicksilver." After the semicolon no subject is expressly inserted, the language being: "when not containing quicksilver but made of lead or containing lead," and referring necessarily for the subject to the language of the provision preceding the semicolon.

The act of 1909, which is quoted only in so far as it may be instructive as to the legislative intent, omitted the words "other colors" before and retained the language after the semicolon of paragraph 54 of the act of 1897.

Counsel for the Government at the hearing sought to introduce testimony illustrative of the subject matter, with a view to supporting the construction of the law contended for by the Government. This testimony was ruled out by the Board of General Appraisers, and error is assigned for that cause. In our view of the case, if error were made by the Board of General Appraisers in sustaining objections to this testimony, it was immaterial error and should not, therefore, control the decision in the case.

The very able brief of counsel for the Government in this case seeking to supply in effect and to read into the statute in fact the very words omitted by Congress in the act of 1897 by construction emphasizes the omission by Congress of the essential words.

While it is true that every provision of law must be read in the light of all the other provisions of that law, and while it is true that the meaning of Congress, particularly in tariff legislation, must be ascertained in the light of the conditions of commerce, and that in this light the language used by Congress must be interpreted, or even in some cases supplied, we do not think that in a case like this where the essential words supporting the construction contended for have been expressly omitted by Congress, the courts can by any rule or method of construction read back into the act such words.

Manifestly reference for the subject of the second provision of the paragraph must be had to the first provision. There is no more reason for confining this reference to one of the subjects of the first provision

than the other. As there are several subjects in the provision the natural construction would be to refer to the last-mentioned subject in that provision which would be "other colors," whereas the contention is made that the reference for a subject must lead beyond these, excluding them, and attach to a previous subject. This does violence to the natural, logical, and grammatical construction of the paragraph. The fact that some inconsistency may be wrought by this holding, or that some inequalities of duties may be levied, or that some disturbance may be had in the remaining or other provisions, is not a sufficient warrant for the court to read back into the statute language expressly omitted therefrom by the Congress.

In the opinion of the court, the language of the act is plain and unambiguous. The rule is well settled that in the presence of such a provision the court should abstain from interfering with the will of Congress as expressed.

In Reimer *v*. Schell (4 Blatch., 328), approved in Barber *v*. Schell (107 U. S., 617), Nelson, circuit justice, said:

The legislature designates the articles by special description, as contradistinguished from a designation by a commercial name, and the proper inquiry as to their qualities and characteristics, with a view to ascertain if they come within the description. If they do, no argument can take them out of the rate of duty which has been imposed.

And again, it is stated of courts by the Supreme Court of the United States in Bate Refrigerating Co. *v*. Sulzberger (157 U. S., 1), and quoted at length in United States *v*. Shing Shun & Co. (173 Fed. Rep., 844), as follows:

Where the language employed in an act is clear and certain, they have nothing to do with the reasonableness or justice of the results flowing from according it its natural, usual, and obvious meaning, nor with any supposed policy act' ating its framers.

And in Scott *v*. Reid (10 Peters, 524) the court said:

* * * It is not for the court to say where the language of the statute is clear, that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions. *

The principle was rather succinctly stated in Coles *v*. Collector (100 Fed. Rep., 442), wherein the court states:

To undertake a departure from the language used would in fact be an unjustifiable assumption by the court of legislative power. It is the duty of the court, where the language is free from doubt or uncertainty, to confine itself to the words of the legislative body that enacted the law, without adding anything thereto or subtracting anything therefrom.

In order for this court to approve the contention of the Government in this case it would be necessary, as stated, to read into the

statute words expressly omitted by Congress therefrom. We do not feel warranted in so doing, notwithstanding the persuasive force of the many rules of construction invoked by counsel for the Government. This conclusion disposes of the cross appeal in this case.

*Affirmed.*