UNITED STATES v. REED & KELLER (No. 910).[1]

SHELLS, CUT AND BORED, USED FOR ORNAMENTAL PURPOSES.

Mussel shells prepared by cutting and boring holes and used for ornamental purposes, having been advanced in value and adapted to a definite use, are not entitled to free entry under paragraph 635, tariff act of 1897, but were dutiable as "shells engraved, cut, ornamented, or otherwise manufactured," under paragraph 450, of that act.—Hartranft v. Wiegmann (121 U. S., 609) distinguished.

United States Court of Customs Appeals, February 1, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28344 (T. D. 32488).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, on the brief), for the United States.

Submitted on record for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

In this case the collector of customs at the port of New York held that certain shells imported on October 3, 1906, were manu-

[1] Reported in T. D. 33165 (24 Treas. Dec., 165).

factures of shells and assessed them for duty at 35 per cent ad valorem under the provisions of paragraph 450 of the tariff act of 1897, which paragraph reads as follows:

450. Manufactures of leather, finished or unfinished, manufactures of fur, * * * mother-of-pearl and shell, * * * and shells engraved, cut, ornamented, or otherwise manufactured, thirty-five per centum ad valorem.

To this decision of the collector the importers objected, and as one of the grounds for their objection the claim was set up in their protest that the goods were shells in their natural state and therefore entitled to admission free of duty under the provisions of paragraph 635 of the tariff act of 1897, which paragraph reads as follows:

635. Pearl, mother of, and shells, not sawed, cut, polished or otherwise manufactured, or advanced in value from the natural state.

The Board of General Appraisers sustained the protest and the Government appealed.

So far as appears from the record, no testimony of any kind was introduced on the hearing. The report of the appraiser discloses, however, that the merchandise "consists of mussel shells prepared by cutting and boring holes and used for ornamental purposes." The importers, as appears from the decision of the board, conceded the correctness of the appraiser's description and were content to rest their case on the facts as found in his report. With this as the state of the record we do not see how the shells in issue, which are admittedly cut and bored, can be brought within the meaning of paragraph 635, which exempts from duty those shells only which are "not sawed, *cut,* polished or *otherwise manufactured, or advanced in value from the natural state.*" These shells have been "cut" and certainly have been submitted to manufacturing processes which are not usually employed except to adapt a substance to a definite use, and, presumptively at least, to better the condition and advance the value of the raw material. We must find, therefore, that the goods are not exempt from duty under the provisions of paragraph 635.

The collector finds that the shells are "prepared by cutting and boring holes and used for ornamental purposes," and that they are manufactures of shell. Having no evidence to the contrary and no samples of the goods before us, we can not say that they are not. The description of the appraiser would cover shell ornaments and for aught that appears to the contrary in the record the merchandise under discussion may be articles of shell fully completed and ready for use. But if the goods are not "manufactures of shell," they are admittedly shells "cut" and are therefore covered by that part of paragraph 450 which imposes a duty of 35 per cent ad valorem on "shells engraved, cut, ornamented, or otherwise manufactured." Hartranft *v.* Wiegmann (121 U. S., 609), which is cited by the board as authority for overruling the collector, is not determinative of the

point involved in this controversy. In that case the provision of the statute passed upon by the Supreme Court imposed a duty of 35 per cent ad valorem on "manufactures of shell." Here the statute imposes a duty of 35 per cent ad valorem not only on "manufactures of shell," but also on "shells engraved, cut, ornamented, or otherwise manufactured." The difference in wording between the two provisions is marked, and the same interpretation can not be given to them without ignoring the plain meaning of the language used and the fact that the change in language, following, as it did, the Hartranft case, was evidently intended to avoid the reasoning of that decision. Indeed that case itself indicates very clearly that had the language of the statute then in effect been the same as that of the statute now in force a contrary conclusion would have been reached. The court said:

> In "Schedule M" of section 2504 of the Revised Statutes, page 475, second edition, a duty of 30 per cent ad valorem is imposed on "coral, cut or manufactured"; and, in section 2505, page 484, "coral, marine, unmanufactured" is made exempt from duty. These provisions clearly imply that, but for the special provision imposing the duty on cut coral, it would not be regarded as a manufactured article, although labor was employed in cutting it.

We think the rate of duty assessed by the collector was correct. The decision of the Board of General Appraisers is therefore *reversed*.

### CONCURRING OPINION.

De Vries, Judge, concurring: I am constrained to concur with my colleagues in the conclusion, but not in the grounds of this decision. The decision is predicated upon essentially an agreed statement of facts set forth in the report of the local appraiser, that the merchandise "consists of mussel shells prepared by cutting and boring holes *and used for* ornamental purposes." The uses of the importation are therein agreed as a fact in the case, and, therefore, the speculation of the court as to the other possible uses, indulged by reason of the absence of evidence, that the articles "may be articles of shell fully completed and ready for use" is unwarranted and beyond the agreed use, to wit, "for ornamental purposes." The merchandise is, as agreed, completed articles ready for use as ornaments, but that use, and the processes applied to the shells are almost identical with those the subject of Hartranft v. Wiegmann (121 U. S., 609).

Nor do I agree that paragraph 450 of the tariff act of 1897 was phrased to meet the Hartranft decision. That case was decided May 2, 1887, over 20 years before the enactment of paragraph 450, and in the interim Congress had twice, in 1890 and 1894, reenacted section 2504, Revised Statutes, in all essential particulars exactly as the statute read as construed in the Hartranft case.

The board, upon the authority of Hartranft *v.* Wiegmann (121 U. S., 609), sustained the protest, holding that the shells in question were entitled to free entry under said paragraph 635. It is ordinarily held, at least in tariff law, that where articles or processes in a paragraph are enumerated with and include a descriptive term that the rule of *noscitur a sociis* obtains. Arthur *v.* Butterfield (125 U. S., 70); Forbes Lithograph Manufacturing Co. *v.* Worthington (135 U. S., 655); Wiebusch & Hilger *v.* United States (84 Fed., 451).

This is particularly true of enumerations such as are contained in paragraph 450, where the enumerated processes are limited· or qualified by such words as "or otherwise manufactured." In such cases it is ordinarily held that the enumerated processes—such as "engraved," "cut," or "ornamented," in paragraph 450—must be of that dignity as will amount to a manufacture, the article constituting a "shell manufactured" as distinguished from a "manufacture of shell." G. A. 5007 (T. D. 23320).

This fact confines paragraph 450 in its application to shells, to "manufactures of shells," and "shells manufactured." The shells manufactured must of course, under the rule stated, be manufactured by application of one or more of the enumerated processes of manufacture. Paragraph 635 not only negatives the latter language of paragraph 450, thereby denying free entry to shells manufactured, but extends the negation to "shells * * * advanced in value from the natural state."

Congress evidently in the two paragraphs, therefore, had in mind "manufactures of shells," "shells manufactured," and shells neither such but "advanced in value from the natural state." If an importation was a manufacture of shells or shells manufactured, it fell within paragraph 450 for dutiable purposes. If it was neither, but was advanced in value from the natural state, it would, *under the above rule of construction*, fall for duty within the nonenumerated manufactured provision.

The Hartranft case decided more than that the shells were not "manufactures of shells." The imported condition of the shells in that case and in this bore striking similarity. They were described by the court in part in the following language, stating the case:

The question is, whether cleaning off the outer layer of the shell by acid, and then grinding off the second layer by an emery wheel, so as to expose the brilliant inner layer is a manufacture of the shell, the object of these manipulations being simply for the purpose of ornament, and some of the shells being afterwards etched by acids, so as to produce inscriptions upon them.

The competing paragraphs were for (1) "manufactures of shells." dutiable; and (2) "shells of every description, not manufactured," free.

In order that the shells should not be free under the latter description it was plainly therefore necessary for the court to find, as it did, that the importations were not only not "manufactures of shells," but that they were not "shells manufactured." In fact, a negation of the free-list provision required the precise finding by the court that the importation was not "shells manufactured."

The court said:

> We are of the opinion that the shells in question here were *not manufactured, and* were not *manufactures of shells*, within the sense of the statute imposing a duty of ?5 per cent upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. *They were still shells.* They had not been manufactured into a new and different article, having a distinctive name, character, or use from that of a shell.

And this though they were ornaments made of shells.

The description of the merchandise given by the Supreme Court and the stipulated facts before the board here were substantially alike. The Supreme Court held that the shells in that case were shells not manufactured so as to come within the free-list provisions so providing.

Since, therefore, the Supreme Court has declared practically identical processing not to constitute either shells manufactured or manufactures of shells within the unmodified use of those terms when so appearing, as in the Revised Statutes, sections 2504 and 2505, I prefer to rest concurrence upon a ground other than that which declares these importations similarly processed either such.

The competing paragraphs are of the act of 1897, as follows:

> 450. Manufactures of * * * mother-of-pearl and shell, * * * or of which these substances or either of them is the component material of chief value, not specially provided for in this Act, and shells engraved, cut, ornamented, or otherwise manufactured, thirty-five per centum ad valorem.

And—

> 635. Pearl, mother of, and shells, not sawed, cut, polished or otherwise manufactured, or advanced in value from the natural state.

If we read the paragraphs together as expressive of the intent of the Congress to include therein and thereby as free or dutiable all shells and conditions thereof from the "natural state" to the manufactured article in chief value of shell, we must abandon the rule of *noscitur a sociis* as not in harmony with the congressional purpose and give to the words "shells engraved, cut, ornamented, or otherwise manufactured" in paragraph 450 and "not sawed, cut, polished or otherwise manufactured" in paragraph 635 their natural import, construing the paragraphs as exactly correlated—that where the one ceases the other begins to be effective.

Commanding precedent for this construction of the precise paragraphs is found in the very exhaustive opinion by Mr. Justice

Gray, speaking for the United States Court of Appeals, Third Circuit, in Schoenemann *v*. United States (119 Fed., 587), wherein it is stated:

Furthermore, we think that the words "or advanced in value from the natural state," must be read with "or otherwise manufactured," not disjunctively, but so as to join the general concept of the latter phrase with that of the former.

This construction of the two paragraphs *in pari materia* as constituting an exhaustive code of legislation covering the entire gamut of conditions of shells between those of the "natural state" and "manufactures of shells," adopted by reason of the difference in the language of the competing paragraphs in the two cases, alone, in my opinion, justifies a conclusion different from the Hartranft case. In that case, as stated, there was no modification of the term "manufacture," the competing paragraphs being "manufactures of" and "not manufactured." In the present case there are several specific modifications not only affecting "manufactures of" and "otherwise manufactured" as well as the negative of these, but there is the added phrase "not advanced in value from the natural state." The inclusiveness of both paragraphs is thereby so far broadened that the above construction which merges the sphere of their operations may well be warranted. This principle of construction is not without approval by the highest authority. United States *v*. Riggs (203 U. S., 136).

I therefore concur that the *rate* assessed by the collector was correct.