UNITED STATES *v.* OWEN & CO. *et al.* (No. 1232).[1]

CABINET WOODS.

Spanish-cedar strips or boards, intended for use in the manufacture of cigar boxes, were assessed with duty as sawed cedar under paragraph 203, tariff act of 1909. The testimony in the case establishes the fact that Spanish cedar is commonly known as a "cabinet wood," such as is covered by paragraph 203. The assessment is sustained.

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States, General Appraisers, G. A. 7481 (T. D. 33642).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Leland N. Wood,* special attorney, on the brief), for the United States.

*Hatch & Clute* (*Walter F. Welch* of counsel) for the appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now before the court consists of small boards of Spanish cedar imported from Cuba, each approximating 5 or 6 feet in length, 5 or 6 inches in width, and three-sixteenths to a quarter of an inch in thickness. The importation was designed for use as material for the manufacture of cigar boxes.

The appraiser, acting under the department's instructions (T. D. 32482), returned an advisory classification of the merchandise as sawed cedar, dutiable at 15 per cent ad valorem under paragraph 203 of the tariff act of 1909. Duty was assessed by the collector in accordance with this return.

The importers duly filed their protest against the assessment, claiming classification of the merchandise as sawed lumber, not specially provided for, dutiable at $1.25 per thousand feet board measure, under the provisions of paragraph 201 of the act.

_____
[1] Reported in T. D. 33887 (25 Treas. Dec., 473).

The protest was heard upon evidence by the Board of General Appraisers and was sustained, from which decision the Government now appeals.

The single issue made by the record is whether or not the importation is dutiable as sawed cedar under paragraph 203 of the tariff act of 1909. If the merchandise is not governed by that paragraph it would without question be dutiable under paragraph 201, as claimed by the importers.

The following is a copy of paragraph 203 of the act of 1909:

203. Sawed boards, planks, deals, and all forms of sawed cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, and all other cabinet woods not further manufactured than sawed, fifteen per centum ad valorem; veneers of wood, and wood unmanufactured, not specially provided for in this section, twenty per centum ad valorem.

The importers do not deny that the boards in question are Spanish cedar. They maintain, however, that this fact alone does not bring the merchandise within the terms of the foregoing paragraph, for they contend that the word "cedar," as used in the paragraph in conjunction with the description "all other cabinet woods," covers only such cedar as is fitted or intended for use as cabinet wood. The importers maintain that the boards now in question were sawed and fitted for use in the manufacture of cigar boxes and are not shown by the record to be cabinet wood. The importers therefore contend that the imported cedar boards are not dutiable as sawed cedar under paragraph 203, but as sawed lumber not specially provided for under paragraph 201.

The board sustained the protest of the importers, and the following quotations from the board's decision give the reasons upon which the decision rests:

It is not disputed that the wood in question is known as Spanish cedar and that from 80 to 90 per cent of all such cedar imported into the United States is used in the manufacture of cigar boxes.

Narrowed down, the question involved must turn upon whether this cedar is a cabinet wood. On the part of protestants it is contended that the wood in issue is not only not a cabinet wood by reason of being a soft wood, but also for the added reasons that it is resinous and so cut and prepared as to make it fit only for use in the making of cigar boxes. The Government, on the other hand, contends that Spanish cedar is a cabinet wood and is so known commercially.

\*       \*       \*       \*       \*       \*       \*

If it were a conceded fact that this cedar was a cabinet wood, adaptable to uses for which cabinet woods are ordinarly used, it would not be open to question that it must take classification under paragraph 203; but, notwithstanding the testimony of witnesses who were shown to be dealers in cabinet woods, it was not established that there existed such a uniform and general understanding different from the common or ordinary understanding as to what it is in fact, or the uses to which it is practically and commercially

adapted, as to take it out of the class to which it commonly belongs and give it a distinctly different name having an altogether different meaning.

The one undisputed fact that we think must be accepted as controlling the classification here is that of use.

As already stated, it is conceded that from 80 to 90 per cent of this class of cedar is used in making cigar boxes, and by a long line of authorities there is warrant for holding that the classification of merchandise may be determined by its chief use. Magone v. Weiderer (159 U. S., 555); Meyer v. Cadwalader (89 Fed., 963); Vandiver v. United States (1 Ct. Cust. Appls., 194; T. D. 31219); United States v. Marsching (1 Ct. Cust. Appls., 216; T. D. 31257). Therefore upon this question of use alone the protests should be sustained, but another fact not to be overlooked is the long-continued practice of classification which the Government seeks in this case to have changed. Congress presumably had before it the decision of Judge Coxe, In re Myers, supra, when the tariff revision of 1897 was made, and having indicated no purpose to avoid its effects it must be presumed that its terms were acquiesced in. The Abbotsford (98 U. S., 440).

We find as a fact that the merchandise is sawed lumber and hold it subject to duty at the rate of $1.25 per thousand feet board measure as claimed.

Upon a review of the present record the court is unable to sustain the foregoing findings of the board, for, according to the court's reading of the record, those findings are wholly unsupported by the evidence. The board's decision rests upon the construction that no cedar is dutiable under paragraph 203 except such as is included within the term "cabinet woods." If this construction be correct, it becomes necessary in the first instance to find the correct definition of the term "cabinet woods" as used in the paragraph. The first inquiry in this behalf is to determine whether or not the legislative term in question possessed a definite, general, and uniform commercial meaning in the usages of the trade in this country. If it appears that there existed such a commercial definition of the term differing from the general one the commercial meaning must of course prevail.

At the trial before the board the Government examined 10 witnesses upon the subject of the commercial usage of the term "cabinet woods." One of these witnesses had dealt in mahogany, rosewood, granadilla, ebony, Spanish cedar, boxwood, etc., at wholesale in this country during the period of 34 years, another 37 years, another 50 years, and the others for varying periods, mostly of great length.

These witnesses all testified either in exact words or in substance that the term "cabinet woods" had for very many years possessed a definite, uniform, and general commercial meaning and application in trade in this country, and that Spanish cedar was one of the woods included therein.

The following extracts from the testimony of witness William E. Uptagrove will exemplify the Government's evidence upon this subject:

Q. Was the term "cabinet woods" one with which you came in contact in the trade?—A. It was.

Q. Was it a term which had a uniform meaning throughout the wholesale trade?—A. It did.

Q. Embracing a well-known class of woods?—A. Yes, sir.

Q. Please enumerate some of the woods which were and are known to the wholesale trade as cabinet woods?

Mr. GREGORY. I object to the witness giving that opinion upon the ground that he is not qualified. He has not been shown to be qualified. I would like to examine him further.

General Appraiser McCLELLAND. From 1871 to 1905 he dealt extensively, he says, in all kinds of cabinet woods and enumerated quite a number of them. That was quite a lengthy experience, it seems to me.

By General Appraiser McCLELLAND. During those years that you have mentioned, did you buy or sell at wholesale throughout the country?—A. Yes, sir. .

Q. Were your sales general throughout the United States?—A. Throughout the United States. .

(Objection overruled.)

Mr. LAWRENCE. Please repeat the question.

By Mr. LAWRENCE (read by the stenographer). Please enumerate some of the woods which were and are known to the wholesale trade as cabinet woods. .

A. Mahogany, rosewood, Spanish cedar, teak, ebony, granadilla, lignum-vitæ. Those are the principal ones.

 *   *    *    *    *    *    *

Q. Now, you say you have dealt in Spanish cedar during your entire experience as a cabinet-wood dealer?—A. Yes, sir; since 1871.

Q. Now, will you please tell us what it is that characterizes certain woods as cabinet woods?—A. Well, those that are used for furniture and kindred purposes—special purposes—fine work of any kind. For instance, ebony is used for ebony keys.

By General Appraiser McCLELLAND. What are the prerequisites in any kind of wood which make them adaptable for the particular uses you have mentioned?—A. Different woods have different merits for the purposes for which they are used.

Q. For making furniture, for instance?—A. They are not all used in making furniture, necessarily, but they all come under the special line of trade known as the cabinet-wood trade.

 *   *    *    *    *    *    *

Q. Would you say that use had anything to do with the question?—A. It has something to do. If it is used for fine and particular purposes it would come under our line of trade, and in a general way it would be considered as a cabinet wood. We advertise ourselves as dealers in cabinet woods.

It is practically conceded in the record that 80 to 90 per cent of all Spanish cedar imported into this country is used in the manufacture of cigar boxes. The Government, however, produced testimony tending to prove that the residue is variously used in the veneering of furniture, in making file boxes, in ornamental finishings, and for like purposes.

It can hardly be denied that the Government's testimony presents very strong proof of the existence for many years in the wholesale trade of this country of a definite, uniform, and general commercial usage of the term " cabinet woods " which included Spanish cedar, together with the other kinds of wood specified in paragraph 203.

Upon the issue presented by the protest, as tried by the board, the burden was upon the importers to establish the fact that no such commercial designation existed.

A review of the record, however, will disclose the fact that the importers did not produce any evidence at all upon the subject of commercial designation, excepting only the very vague and uncertain statement of witness Kirby S. Blauth.

The importers, however, produced a number of witnesses who testified that Spanish cedar is too soft for use in the manufacture of furniture and like wares, and that it is not used for such purposes, but in the manufacture of cigar boxes. And upon this testimony, without meeting the issue of commercial designation at all, the importers really rested their case.

Upon the present record, therefore, the court is constrained to hold that the term "cabinet woods" commercially includes Spanish cedar, and that the board's finding to the contrary is unsustained by the evidence and should be reversed.

There is yet another view of the case which seems to be entitled to mention. In paragraph 203 Congress imposes duty upon certain sawed woods by name, to wit, cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, and satinwood, adding thereto the general description "and all other cabinet woods." If a restricted meaning be placed upon the term "cabinet woods," and if that term is thereupon allowed to dominate the paragraph, it will result in totally eliminating from the paragraph several of the woods which are specifically named therein.

The result thus suggested may be illustrated by the following extract from the testimony of the importers' witness, Charles H. Pearson:

By Mr. WOOD. You said you handled mahogany?—A. I do.
Q. Lignum-vitæ?—A. I do.
Q. Are both of these cabinet woods?—A. No, sir.
Q. Either of them?—A. Yes, sir.
Q. Lignum-vitæ is not?—A. No, sir.
Q. None of its species?—A. No, sir.
Q. Is lancewood a cabinet wood?—A. No, sir.
Q. Do you handle ebony?—A. I do.
Q. Is that a cabinet wood?—A. It is used somewhat in cabinetwork.
Q. Is it a cabinet wood?—A. You can classify it as a cabinet wood.
Q. Do you classify it as a cabinet wood?—A. I do.
Q. Granadilla?—A. No, sir.
Q. Rosewood?—A. Yes, sir.
Q. Satinwood?—A. Yes, sir.
Q. Box?—A. No, sir.

According to the foregoing testimony, lignum-vitæ, lancewood, granadilla, and box are not cabinet woods, and ebony is in doubt.

It is true that the present issue does not relate directly to the woods just named; nevertheless it is plain from the record and from

common knowledge that the contention of the importers would, upon principle, eliminate from paragraph 203 four or five of the woods which are included *eo nomine* by Congress in that paragraph. The following extract from "Notes on Tariff Revision" (255) will show that several of the specified woods are not used in the manufacture of furniture and that this fact was known to Congress at the time of the enactment of the paragraph in question:

*Lignum-vitæ, or Brazil wood,* is a native of tropical America. The wood is remarkable for its hardness and heaviness. It is valued for pulleys, castors, mortars, and bowling balls. Stimulative and other medicines reside in the bark, leaves, and resin of this tree.

*Lancewood* is the product of a West Indian tree, and is of great usefulness because of its toughness and elasticity. It is well adapted for the shafts and poles of light carriages.

*Ebony* is the heart of a class of trees common to the eastern Tropics, although the best grades come from India. It is especially valuable for inlaying, cabinet-work, musical instruments, etc. Occasionally the common *persimmon* of the United States furnishes a fair grade of ebony.

*Box trees* are natives of north Africa, south Europe, Central America, and similar climates in Asia. The very hard, heavy, light yellow wood from Spain and Portugal is used for turning, carving, and engraving and for making musical instruments. The bright yellow variety, which is used for similar purposes, comes from Turkey.

*Granadilla* is the green ebony of commerce, and is found in Jamaica, Brazil, and British and Dutch Guiana. It is used for cabinetwork.

In this view of the case it is very doubtful whether the testimony submitted by the importers at the trial is sufficient to sustain their protest even in case the Government had offered no rebutting evidence at all.

The claim is made by the importers that their contention is sustained by former decisions of the board and the courts, and also that it has the sanction of long-continued administrative practice. It appears, however, that the decisions upon this subject have been conflicting; and moreover the question of commercial designation is one of fact to be decided upon the testimony contained in the record. The court does not find that the decisions and the practice thus referred to have given to the term "cabinet woods" a conclusive definition such as is superior to proofs upon the issue of commercial designation.

It is conceded that the present importations are fitted and intended for use in the manufacture of cigar boxes, and it is contended by the importers that the boards in question are so sawed as to be unsuitable for cabinet use. It is apparent, however, that under paragraph 203 the importation is dutiable according to the character of the wood, and not according to the purposes for which an individual importation may be intended or prepared. Furthermore, the paragraph covers "sawed boards, planks, deals, and all forms of sawed cedar,"

thus comprehending the boards in question. It may also be noted that the phrase "and all forms of sawed cedar" first appears in the tariff act of 1909. In all preceding acts the name cedar or cedar wood alone was used. It is probable that this comprehensive classification was adopted by Congress for the purpose of foreclosing the question theretofore litigated concerning the forms and sizes of cedar boards designed for use in the manufacture of cigar boxes.

The decision of the board is *reversed*.