AUGUST BENTKAMP *v.* UNITED STATES (No. 4721) [1]

[1] C. A. D. 500.

United States Court of Customs and Patent Appeals, November 4, 1952

*Sharretts, Hillis & Paley (Joseph F. Donohue* of counsel) for appellant.
*Charles J. Wagner,* Acting Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument October 10, 1952, by Mr. Donohue and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, JACKSON (retired), Associate Judges, and MORRIS, United States District Judge for the District of Columbia.

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1370, overruling the protest of appellant, the importer, and affirming the collector's classification of certain imported sea shells.

The shells were classified by the collector as shells manufactured, dutiable at 35 per centum ad valorem, under paragraph 1538 of the Tariff Act of 1930, which provides:

Par. 1538. * * * and shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured, 35 per centum ad valorem.

In its protest, appellant claimed the merchandise to be entitled to free entry under paragraph 1738 of the same act, which provides:

Par. 1738 [Free List.]. Pearl, mother of, and shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

At the trial, the official sample of the imported shells was received in evidence as appellant's collective exhibit 1, and it was stipulated by counsel for the parties that the shells had been cleaned by chemical means, and that the edges had been ground. The importer, plaintiff below, then rested his case.

Appellee's collective exhibit 2 comprising three shells was received in evidence over certain objections by appellant's counsel, which we

think the trial court properly overruled. The testimony of two customs examiners, appearing as witnesses for the Government, establishes that the imported shells of exhibit 1 are the same as those of exhibit 2 in all material respects, except that they have been ground and the edges rounded off smoothly; whereas the shells of exhibit 2 are as they come from the water with the exception that they have been cleaned and the edges trimmed to a certain extent to take very sharp points off them. The Government sought also to prove by testimony of one examiner, admitted over objection by appellant's counsel, that the shells of exhibit 1 have been materially advanced in value over shells such as those of exhibit 2. It seems, also, that the grinding was not necessary to get the shells in a marketable state, since the record shows that unground shells, such as in exhibit 2, are articles of commerce.

Neither witness was cross-examined, nor was any contradictory testimony introduced by appellant.

An examination and comparison of the shells of exhibits 1 and 2 reveal that the shells appear to be from the family of mollusks identified in the "Encyclopaedia Britannica," 1942 Ed., as the Lamellibranchia group. The shells of collective exhibit 2 have a ragged, uneven edge, and it appears from a comparison of the two exhibits that a quarter inch, or slightly more, of substantially the entire periphery of the imported shells of exhibit 1 has been ground away to produce a smooth, even edge.

The trial court was of the opinion that the imported shells were manufactured and advanced in value, and held that they were not admissible free under paragraph 1738, but were properly classified by the collector as shells otherwise manufactured under paragraph 1538.

Appellant has the burden of proving not only that the classification by the collector is incorrect, but also of proving what is the correct classification. He must prove, firstly, that the imported shells are not classifiable under paragraph 1538. Secondly, he must also establish that they are not excluded from classification under paragraph 1738 by virtue of the negative limitations therein contained.

In paragraph 1738, the words "or advanced in value from the natural state" must be read with "or otherwise manufactured," not disjunctively, but conjunctively, so as to join the general concept of the latter phrase with that of the former. *United States* v. *Colonial Bead Co., Inc.*, 36 C. C. P. A. (Customs) 78, C. A. D. 401. Thus, a mere advance in value *per se* would not exclude the imported shells from paragraph 1738; the advance in value must result because the shells were "sawed, cut, flaked, polished, or otherwise manufactured."

Counsel for appellant asserts that the record lacks substantial evidence that these shells have been increased in value by the grinding operation. We think this argument is without merit. It is clearly

evident from a comparison of exhibits 1 and 2 that a not insignificant amount of labor was expended to produce the ground shells of exhibit 1 from the natural shells such as in exhibit 2; hence, we think we may properly infer from this that the imported shells have been increased in value from the natural state by the grinding. *Colonial Bead* case, *supra*. Furthermore, even if we were not to indulge in this inference, appellant's argument would still be without merit. As a necessary corollary to his burden of proving that the shells are properly classifiable under paragraph 1738, *appellant* must prove, *inter alia*, that the shells have *not* been advanced in value. He may not avoid this by remaining mute on the point and then challenging the Government's voluntary attempts to affirmatively prove an increase in value.

This brings us to consideration of the main question in the case, namely: are the imported shells "sawed, cut, flaked, polished, or otherwise manufactured" within the meaning of paragraph 1738? If not, then they are free of duty. If so, then they are excluded from the free list provision and are properly classifiable under the dutiable provision of paragraph 1538.

Appellant's main contention is that the imported shells are not "manufactured" within the purview of paragraph 1538 and the exclusion clause of paragraph 1738, merely because the edges have been ground. In support of this contention, he asserts that the case of *Hartranft* v. *Wiegmann*, 121 U. S. 609 (1887), is controlling. In that case, the imported shells had been cleaned with acid and then ground on an emery wheel to expose the brilliant inner layer and a legend afterwards etched on some of them with acid. The Supreme Court held that the shells were not dutiable as manufactures of shells but came under the free list provision for shells not manufactured. Said the Court:

* * * They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article *necessarily* a manufactured article, within the meaning of that term as used in the tariff laws. * * * [Italics added.]

In the tariff act involved in the *Hartranft* case, the dutiable provision was "Shells, manufactures of: thirty-five per centum ad valorem"; the free list provision was "Shells of every description, not manufactured."

Three years later in the Tariff Act of 1890, the first tariff law passed after the *Hartranft* decision, both the dutiable and free provisions relating to shells were significantly changed to the following:

Par. 462. Manufactures of ivory, vegetable ivory, mother-of-pearl, and shell, or of which these substances or either of them is the component material of chief value, not specially provided for in this act, forty per centum ad valorem.

Par. 701 [Free List.]. Shells of all kinds, not cut, ground, or otherwise manufactured.

There was no pertinent change in the Tariff Act of 1894, but material changes were again made in the Tariff Act of 1897. The provisions pertaining to shells in that act were as follows:

Par. 450. * * * and shells engraved, cut, ornamented, or otherwise manufactured, thirty-five per centum ad valorem.

Par. 635 [Free List.]. Pearl, mother of, and shells not sawed, cut, polished, or otherwise manufactured, or advanced in value from the natural state.

These two provisions of the 1897 act, insofar as shells are concerned, continued in substantially the same language through the tariff acts of 1909, 1913, 1922, and 1930.

It is to be noted that shortly after the *Hartranft* decision Congress materially changed both the dutiable and free list tariff provisions pertaining to shells. In *United States* v. *Reed & Keller,* 3 Ct. Cust. Appls. 504, T. D. 33165, which involved classification of an importation of shells either under paragraph 450 or 635 of the 1897 act, this court considered the scope of the *Hartranft* decision in the light of the subsequent material changes in the statutory language of the applicable tariff provisions. Discussing the differences in wording between the dutiable provision of "Manufactures of * * * shells * * *" in the *Hartranft* case and that of paragraph 450 of the 1897 act, *supra,* the court stated:

* * * The difference in wording between the two provisions is marked, and the same interpretation can not be given to them without ignoring the plain meaning of the language used and the fact that the change in language, following, as it did, the Hartranft case, was evidently intended to avoid the reasoning of that decision. Indeed that case itself indicates very clearly that had the language of the statute then in effect been the same as that of the statute now in force a contrary conclusion would have been reached. The court said [in the Hartranft case]:

In "Schedule M" of section 2504 of the Revised Statutes, page 475, second edition, a duty of 30 per cent ad valorem is imposed on "coral, cut or manufactured"; and, in section 2505, page 484, "coral, marine, unmanufactured" is made exempt from duty. These provisions clearly imply that, but for the special provision imposing the duty on cut coral, it would not be regarded as a manufactured article, although labor was employed in cutting it.

Similar expressions of opinion with respect to the scope of the *Hartranft* decision in the light of the subsequent statutory changes are to be found in decisions by the Board of General Appraisers, T. D. 12851 (1892) and T. D. 17946 (1897).

Although the facts of the *Reed* case are not precisely in point, they are close, and we are of the opinion that the above-quoted statement from that case is clearly applicable here. Therefore, we think that in view of the materially different statutory provisions involved the *Hartranft* case is distinguishable here as it was in the *Reed* case; hence, it is not determinative of the interpretation to be given to paragraphs 1538 and 1738 of the 1930 act in this case.

The term "manufactured" in paragraphs 1538 and 1738 should not be read as though it stands alone, as in the tariff provisions involved in the *Hartranft* case. Rather, this term should take color and meaning from the enumerated operations, which are to be regarded as manufacturing operations within the purview of these paragraphs. To hold differently would be to ignore the plain meaning of the changed statutory language and would in effect eliminate and render meaningless the word "otherwise" in each of these paragraphs. This is a result which we believe Congress clearly could not have intended. Consequently, we are of the opinion that the term "or otherwise manufactured" in the exclusion clause of paragraph 1738 includes all operations which are *ejusdem generis* with "sawing, cutting, flaking, and polishing" unless there is evidence of Congressional intent to the contrary.

It would seem that removal of edges of shells by grinding, as in this case, would, for reasons indicated below, clearly be *ejusdem generis* with "sawing, cutting, flaking, and polishing" and, hence, that the imported shells are "otherwise manufactured" within the purview of the exclusion clause of paragraph 1738. However, it will be noted that the free list exclusion clause of paragraphs 701 and 613 of the 1890 and 1894 acts, respectively, referred to "Shells * * * not cut, *ground*, or otherwise manufactured." [Italics added.] In the act of 1897, the word "ground" was omitted from the exclusion clause of the free list provision, and this change has been carried forward in the subsequent acts of 1909, 1913, 1922, and 1930. Thus it is necessary to consider at this point whether, by such omission, Congress has indicated an intent not to include "shells ground" within the exclusion clause of the free list provision.

Ordinarily, where the essential word that supports a construction contended for appeared in an earlier act and has been omitted in a subsequent one by Congress, the omitted word may not be restored in the terms of the law by judicial construction. *United States* v. *Marsching*, 1 Ct. Cust. Appls. 216, T. D. 31257. Such a change of legislative language is presumed to evidence an intent on the part of Congress to effect a change in meaning. *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022. But this rule of construction is not absolute and does not always compel the conclusion that a change in meaning is meant. *Stroheim & Romann* v. *United States*, 13 Ct. Cust. Appls. 489, T. D. 41370, wherein we discussed the *Post Fish* and *Marsching* cases, *supra*. Particularly, there are exceptions to the rule where such changes of phraseology have been accompanied by other changes in language which plainly indicate a Congressional intent to make no change in meaning, or where this is indicated by application of equally compelling principles of statutory construction,

such as the doctrine of legislative ratification of judicial construction. *Post Fish* case, *supra*, and cases cited therein.

For reasons hereinafter set out, it is our view that this case comes within both the latter exceptions rather than the general rule.

Paragraph 635 of the 1897 act, *supra*, is not a direct carry-over from the preceding act of 1894. Rather, it is a consolidation of the two following provisions in the free list of the latter act:

Par. 580. Pearl, mother of, not sawed, cut, or otherwise manufactured.

Par. 613. Shells of all kinds, not cut, ground, or otherwise manufactured.

Thus, although the word "ground" was omitted from paragraph 635 in the 1897 act, a new word "polished" was added.

In "Funk and Wagnall's New Standard Dictionary," 1938 Ed., we find the following [Italics added.]:

grind, *v.*

I. *t.* * * * 3. To give a shape or edge to by abrasion; cause to become sharp or *polished* by abrasion; as to grind a pair of shears.

 *    *    *    *    *    *    *

II. *i.* * * * 3. To be smoothed, *polished*, or made sharp by rubbing; as, glass or steel grinds easily.

grinding wheel, *n.*

1. Any wheel for *grinding or polishing*.

Moreover, the court takes judicial notice of the fact that polishing is commonly carried out on an emery or buff wheel in substantially the same manner as is grinding. In "Lockwood's Dictionary of Terms Used in the Practice of Mechanical Engineering," 4th Ed., 1913, we find the following [Italics added.]:

Grinding—The abrasion of * * * surfaces on a grindstone or *emery wheel* * * *.

Polishing Lathe, or Polishing Head—A mandrel and pulley driven at high speed and carrying small *emery or buff wheels* for polishing light work.

The meaning of a tariff term is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary. *E. E. Kelly & Co.* v. *United States*, 17 C. C. P. A. (Customs) 30, T. D. 43322. In view of the foregoing, it is our opinion that the words "ground" and "polished," while not necessarily synonymous, are so very closely related in meaning that it would clearly result in very anomalous consequences to hold that shells polished, as by an emery wheel, are excluded from the free list, whereas shells ground in a like manner are not so excluded. A construction resulting in such an anomaly should be avoided, if possible, since it is generally looked upon as contrary to the legislative intent. *Elmer T. Middleton* v. *United States*, 28 C. C. P. A. (Customs) 214, C. A. D. 148; *United States* v. *J. M. Lehman Co., Inc.*, 22 C. C. P. A. (Customs) 106, T. D. 47081. For this reason, we hold that shells ground are *ejusdem generis* with shells "sawed, cut, flaked, [or] polished."

Hence, they are "otherwise manufactured" within the purview of the exclusion clause of paragraph 1738 of the 1930 act, notwithstanding that the term "ground" in the acts of 1890 and 1894 was omitted in the later tariff acts. Accordingly, it follows that the imported shells are properly classified as "shells * * * otherwise manufactured," under paragraph 1538 of the 1930 act.

Moreover, we need not rely solely on resort to dictionary definitions for a solution of the problem. Almost fifty years ago, in 1903, the Board of General Appraisers, in the case of *In re Winters et al.*, T. D. 24720, considered the classification of shells which had been advanced in value "by polishing or grinding, or by both of those processes." The issue before the board was whether such shells were classifiable under paragraph 450 of the 1897 act, *supra*, as "shells * * * otherwise manufactured," or to be admitted free of duty under paragraph 635 of that act, *supra*. The board held that "these articles are 'shells, * * * otherwise manufactured,' within the meaning of the provision in said paragraph 450 for 'shells engraved, cut, ornamented, or otherwise manufactured,' polishing and GRINDING being *ejusdem generis* with the processes of cutting, etc., enumerated in that provison." [Capitals added.] It is of course implicit in that decision that "*grinding*" was considered also to be *ejusdem generis* with the processes of "sawing, cutting, and polishing" enumerated in free list paragraph 701 of the 1897 act.

There was no appeal from this decision of the board, and this holding was later followed, or cited with approval, by it in T. D. 24809 (1903) and T. D. 28988, Abstract 18877 (1908).

Since the board's decisions in the *Winters* case, *supra*, and the latter two cases, Congress has used practically identical statutory language in the provisions pertaining to shells in each of the four successive tariff acts of 1909, 1913, 1922, and 1930. There is a presumption of legislative ratification of judicial construction by a single legislative reenactment of an act in the same language after an unappealed decision of the Customs Court, or its predecessor the board. *United States* v. *Illfelder & Co.*, 9 Ct. Cust. Appls. 40, T. D. 37901. But, although highly persuasive, such presumption is not necessarily a strong one in the absence of evidence showing actual notice by Congress, since that tribunal is not the court of last resort. See 59 C. J. 1061, 1064 [§ 625 (b)]. However, where subsequent to such a decision Congress has reenacted the construed provision in four successive acts using the same language, as is the case here, the doctrine of legislative ratification of judicial construction is controlling in the absence of very compelling reasons to the contrary (of which we find none in this case). The reason for this is that Congress is presumably cognizant of such judicial interpretation and its consequences, and to hold otherwise in the face of such a series of reenactments would be

attributing to that body an unusual indifference or lack of knowledge. That is an attitude to be avoided. *United States* v. *Bassichis Co., et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, and numerous cases cited therein; *Kelly* case, *supra*.

In view of the foregoing, we think the doctrine of legislative ratification is decisive in this case. By virtue of legislative ratification of the board's holding in the *Winters* case, *supra*, we are of the opinion, as we have previously concluded, that shells "ground" are excluded from classification under the free list paragraph 1738 of the 1930 act. Rather, they are properly classified as "shells * * * otherwise manufactured" at 35 per centum ad valorem, under paragraph 1538 of that act.

For reasons hereinbefore set out, the decison of the Customs Court, sustaining the action of the collector, is hereby *affirmed*.

JACKSON, J., retired, recalled to participate herein.

WILLIAM P. COLE, JR., J., having participated below, disqualified himself to sit in this case, and JAMES W. MORRIS, United States District Judge for the District of Columbia, was designated and did serve herein, pursuant to the provisions of Title 28, United States Code, section 293.