MAGEE & Co. *et al. v.* UNITED STATES (No. 1124).[1]

SCRAPS OF NEW OR WORN RUBBER.

> There is no basis in the record for segregating the worn and the new scrap rubber of the importation. The new scrap rubber here is not a manufactured article with a changed texture; it is still rubber and "rubber, crude." Since 1890 rubber of this description had been entitled to free entry, and the act of 1909, which still relates the scrap there dealt with to the articles of which it had once been composed, does not withdraw from the term "rubber, crude" anything that had theretofore fallen within the clause. The merchandise was entitled to free entry.—United States *v.* Michelin Tire Co. (1 Ct. Cust. Appls., 518; T. D. 31544).

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31630 (T. D. 33263).

[Reversed.]

*Churchill & Marlow* for appellants.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of so-called scrap rubber waste. It comprises articles of new rubber, such as balls, all of which are defective and unfit for ordinary use, scrap pieces of new rubber, rubber shoes which have not been worn but damaged in manufacture, and included in the importation it is said there is also scrap rubber, articles of various kinds, which have been in actual physical use, and as the result of such use have been worn out. As the record furnishes no basis for any segregation of the old and worn-out portions from those which are clippings from new material, the case should be treated as though the articles were all of the description indicated by the report of the appraiser as scraps or pieces of new rubber or rubber not worn out by use, and the importers appear to have so treated the goods.

The goods were held subject to duty as waste not specially provided for under paragraph 479 of the act of 1909. Free entry was claimed by the importer under the provisions of paragraph 591, which reads as follows:

India rubber, crude, and milk of, and scrap or refuse India rubber, fit only for remanufacture, and which has been worn out by use.

The history of this provision dates back to the tariff act of 1883, in which there appeared in the free list, "india rubber, crude and milk of," and a provision in the similitude clause that "nonenumerated articles similar in material and quality and texture, and the use

---

[1] Reported in T. D. 33874 (25 Treas. Dec., 436.)

to which they may be applied, to articles on the free list, and in the manufacture of which no dutiable materials are used, shall be free." The question arose under this act as to whether old worn-out india-rubber shoes and scraps of rubber were entitled to free entry. The court held that the old shoes, having lost their commercial use and value as such, and having a value only by reason of the india rubber they contained, were a substitute for crude rubber; that they could not fairly be called articles composed of rubber, and as such dutiable under a provision for such articles; and that although they may have originally been manufactured articles composed of india rubber they had lost their commercial value as such articles and substantially were merely the material called crude rubber. Cadwalader v. Jessup & Moore Paper Co. (149 U. S., 350).

Following the decision of this case at the circuit, and before the case was reached in the Supreme Court, the act of 1890 had changed the form of the provision for free india rubber to read as follows:

India rubber, crude, and milk of, and old scrap or refuse India rubber, which has been worn out by use and is fit only for remanufacture.

This language was continued in the act of 1897, and in 1909 the paragraph was modified to read:

India rubber, crude, and milk of, and scrap or refuse India rubber, fit only for remanufacture and which has been worn out by use.

It is obvious that under the act of 1890 the scrap which was provided for in the free list as scrap was the old scrap derived from articles of india rubber which had been worn out by use and which was fit only for remanufacture. The change of the act of 1909 by the omission of the word "old" appears not to have changed the meaning, at least such is the contention of the Government. So the real question is whether the placing in 1890 of old scrap or refuse india rubber which had been worn out by use in the free list in terms had any other effect than to adopt the rule laid down in the Cadwalader case, where the similitude clause was relied upon to sustain the holding. Such we think is the force and effect of this language. Whatever before that had fallen within the term "india rubber, crude," was in no way affected by this legislative provision incorporating in terms what had before rested upon the rule of similitude, namely, treating as crude old scrap or refuse which resulted from the use of a manufactured article which has been worn out by use.

The question then recurs as to whether scrap or the unused portions of crude rubber which have never been used as an article, but containing simply the material rubber, are anything other than crude rubber. Obviously the word "crude" here is not applied to articles composed of rubber, but its application is to the material. It would seem not to be very important, in determining whether rubber is

crude, to distinguish its various forms, whether it be cut into small pieces or into large pieces or in one shape or form or another so long as it has not reached the dignity of an article, but is merely the material out of which an article is made. While it is such it would seem to be crude material, hence crude rubber.

This accords with the view which was expressed by this court in the case of United States *v.* Michelin Tire Co. (1 Ct. Cust. Appls., 518; T. D. 31544.) We were there dealing with paragraph 579 of the act of 1897 and it was said:

The manifest purpose of Congress in paragraph 579 was to put on the free list all india rubber, whatever its source or condition, which was imported to be used as a material in the manufacture of india-rubber articles. * * * Old scrap or refuse india rubber, owing to the sources from which it was obtained and condition in which it was found, needed qualifications lest there be introduced free under that term otherwise dutiable articles. The actual thing made free by this provision seems to have been lost sight of. It is a provision enacted solely for the purpose of permitting free entry of india rubber as and when a manufacturing material. * * * The Congress having in mind rubber only, and that the source of much of this rubber in condition as found was old shoes, tires, hose, and other similar sources, which were apparently "articles" or "manufactures" dutiable under other specific provisions of the tariff law, confined its language in paragraph 579 so as to embrace only the rubber contained in these old articles. It is not old rubber shoes or old rubber tires or old rubber hose that are made free, but is the old scrap or refuse rubber found in these things.

And we there held that the india rubber recovered from worn-out articles was, under this paragraph, entitled to free entry.

We think it is clear that the purpose of Congress was, as stated, to admit free of duty rubber which was a material for the manufacture of india-rubber articles and which was nothing more. This was sufficiently provided for as to rubber in any form so long as it was crude.

In United States *v.* Sheldon (2 Ct. Cust. Appls., 485; T. D. 32245), in the opinion of Judge De Vries, it is said:

The word "crude" as used in tariff laws has by construction and a long and consistent line of decisions been given a meaning somewhat variant from its common and accepted meaning, the frequent reenactment of the term in the statute having been tantamount to a confirmation thereof. What constitutes a refining or advance in condition from the crude state of the article has likewise been the subject of judicial and legislative construction, and it is not every manipulation, though it may add something to the value or condition of the article, which may be held to bring it within such language of the statute. Its presence in a tariff act requires that it be construed with a thought to its apposite conditions provided in the act, to wit, manufactured or a condition of substantial advancement by processing.

Further in the same opinion, at page 497, it was said:

And in United States *v.* Michelin Tire Co. * * * this court held that where old scrap or crude rubber was chopped and there was separated therefrom particles of iron, such as rivets, valves, etc., grinding the rubber into

smaller particles, chemically treating, washing, riffling, and blowing these, are all done to separate the rubber from the other component materials of the old scrap or refuse from which it was reclaimed; in short, to recover or reclaim the rubber content of these old articles in a shape suitable for transportation or marketing did not carry it out in the category of "crude" rubber in paragraph 579 of the tariff act of 1909.

The case of United States v. Michelin Tire Co. as thus construed is decisive of the present case.

Of course, rubber which had at any stage of its history been made into articles could no longer be said to be crude rubber, except by similitude, or except as made so by the express terms of the enactment, which, as above stated, was first had in 1890. But not so new scrap, which never had formed an article of commerce or taken on any form subjecting it to duty under the terms of the tariff law. Such material had not lost its identity as rubber. It was not a manufactured article which had been changed in texture. It was still rubber, and "rubber, crude," and was therefore, under the act of 1883, entitled to free entry. It was not taken out of the terms of that act by the act of 1890 or 1897, nor, as we think, by the act of 1909, which still relates the scrap there dealt with to the articles of which it had once been composed and does not withdraw from the term "rubber, crude," anything that theretofore had fallen within that clause.

We think, for the reasons stated, that the merchandise is entitled to free entry, and the decision of the board is *reversed*.