STROHEIM & ROMANN *v.* UNITED STATES (No. 2584) [1]

CHANGE IN LANGUAGE IMPLIES, NOT NECESSITATES, CHANGE IN MEANING—COUNTABLE COTTON CLOTH.

Where a revising tariff act changes the language used in the revised one, one is put upon notice that a change in meaning might be intended; but it may appear otherwise; and no rules of construction are to be resorted to when the meaning is plain.    The fact that paragraph 323, tariff act of 1909, levying cumulative duty on countable cotton cloth, furnished a rule of construction, while the corresponding provision of the act of 1922 does not, does not show that Congress intended a different rule in the 1922 act; and the colored countable cotton cloth paragraph (903) of the 1922 act is to be construed according to the plain import of its words.    Such cloth, averaging a yarn count of no more than 40, is dutiable at $0.0055 per average number per pound (and a minimum of 15 per centum ad valorem, plus five-sixteenths of 1 per centum for each number), plus 4 per centum for being as much as 40 per centum vat dyed.

United States Court of Customs Appeals, February 2, 1926

APPEAL from Board of United States General Appraisers, Abstract 48558

[Affirmed.]

*Allan R. Brown* for appellants.
*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.

[Oral argument December 16, 1925, by Mr. Brown and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal, by the importers, from the decision of the Board of General Appraisers, involves the construction of paragraph 903 of

---

[1] T. D. 41370.
70734—26†—VOL 13——32

the Tariff Act of 1922, under the third part of which the importations, cotton cloth, were admittedly properly dutiable and which paragraph reads as follows:

903. Cotton cloth, printed, dyed, colored, or woven-figured, containing yarns the average number of which does not exceed number 40, fifty-five one-hundredths of 1 cent per average number per pound; exceeding number 40, 22 cents per pound and, in addition thereto, sixty-five one-hundredths of 1 cent per average number per pound for every number in excess of number 40: *Provided,* That none of the foregoing, when containing yarns the average number of which does not exceed number 80, shall pay less duty than 15 per centum ad valorem and, for each number, five-sixteenths of 1 per centum ad valorem; nor when exceeding number 80, less than 40 per centum ad valorem: *Provided further,* That when not less than 40 per centum of the cloth is printed, dyed, or colored with vat dyes, there shall be paid a duty of 4 per centum ad valorem in addition to the above duties. Plain gauze or leno woven cotton nets or nettings shall be classified for duty as cotton cloth.

While it is not contended by anyone in this case that the merchandise is subject to the provisions of paragraph 906, it is urged that the provisions of this paragraph, which provides for additional duties to those covered by paragraph 903, point to the intention of Congress in enacting the second proviso in paragraph 903. Paragraph 906 is as follows:

906. In addition to the duty or duties imposed upon cotton cloth in paragraph 903, there shall be paid the following duties, namely: On all cotton cloths woven with eight or more harnesses, or with Jacquard, lappet, or swivel attachments, 10 per centum ad valorem; on all cotton cloths, other than the foregoing, woven with drop boxes, 5 per centum ad valorem. In no case shall the duty or duties imposed upon cotton cloth in paragraphs 903, or 903 and 906 exceed 45 per centum ad valorem.

The colored cotton cloth in controversy is conceded by both appellants and appellee to be dutiable under the first part of the paragraph, and since not less than 40 per centum of the cloth was printed, dyed, or colored with vat dyes, it is conceded that it should bear an additional duty of 4 per centum ad valorem under the last proviso of said paragraph 903.

The controversy, in this case, arises about the manner in which the collector applied the 4 per centum additional duty proviso. The importations consisted of two entries. Entry 751114 covered 1,267½ yards of 50-inch dyed mercerized cotton repp. Its entered and appraised value was $515. It was returned as weighing 4.1 ounces per square yard and as being of an average yarn number of 32. Since the cloth was 1,267½ yards long and 50 inches wide, it measured 1,760$\frac{5}{12}$ square yards and its weight at 4.1 ounces per square yard was 451.1 pounds. Since the cloth is of an average yarn number of 32, it is subject to duty (at the rate of $0.0055 per number per pound) at $0.176 per pound. The duty, on this entry, under the first part of the paragraph, therefore, was $79.39. $79.39 is equivalent to 15.41 per centum ad valorem. But the minimum rate of duty on

this cloth, under the paragraph, is 15 per centum plus five-sixteenths of 1 per centum for each number, or a total of 25 per centum.

Entry 774246 covered 505½ yards of 50-inch dyed mercerized cotton repp. Its entered and appraised value was $208. It was returned as weighing 4.08 ounces per square yard and as being of an average yarn number of 33. Since the cloth was 505½ yards long and 50 inches wide, it measured 7.02.08 square yards and its weight at 4.08 ounces per square yard was 179¾ pounds. As the cloth is of an average number of 33, it is subject to duty (at the rate of $0.0055 per number per pound) at $0.1815 per pound. This makes the duty on this entry $32.62. This duty is equal to an ad valorem duty of 15.68 per centum. But the minimum duty, under the paragraph, is 15 per centum plus five-sixteenths of 1 per centum for each number, or a total of $25\frac{5}{16}$ per centum.

The collector, in the first entry, took the minimum ad valorem duty of 25 per centum and added to it the 4 per centum additional duty, making a total of 29 per centum, and, in the second entry, he took the minimum $25\frac{5}{16}$ per centum and added to it the 4 per centum vat dye additional duty, making a total of $29\frac{5}{16}$ per centum.

It is the contention of the importers that the collector erred in adding the 4 per centum to the minimum duties aforesaid; that he should have added the 4 per centum to 15.41 per centum in the first entry, and 4 per centum to 15.68 per centum in the second entry, making 19.41 per centum and 19.68 per centum, respectively; that, since the initial duty plus the 4 per centum additional duty does not amount to 15 per centum plus five-sixteenths of 1 per centum on each of the entries, the collector is entitled, under the paragraph, nevertheless to take duty at the rate of 25 per centum on the first entry, and $25\frac{5}{16}$ per centum on the second entry. The appellants insist that the collector had no right to begin with the minimum duty as the initial duty and add to it the 4 per centum additional duty; that the last proviso in paragraph 903 is not a classifying provision and that it merely provides a minimum rate of duty and its only effect is to make sure that the cloth, which is within the purview of the paragraph, shall pay a duty at not less than the ad valorem rates prescribed. In support of this contention appellants have cited *Brown & Co* v. *United States*, 11 Ct. Cu . Appls. 403, and. *United States* v. *Matagrin*, 1 Ct. Cust. Appls. 309.

It is further pointed out and argued by the importers that in paragraphs 315, 316, 317, 318, and 319 of the tariff act of 1909 were to be found the provisions for countable cotton cloth with various minimum rates prescribed, and that paragraph 323 of the same act provided for certain extra cumulative duties, and that, in paragraph 323, the following expression was used:

\* \* \* there shall be paid the following cumulative duties, the intent of this paragraph being to add such duty or duties to those to which the cotton cloth would be liable if the provisions in this paragraph did not exist. \* \* \*

It is urged at great length and with much plausibility that, in the case at bar, if Congress had intended that the 4 per centum additional duty should be added to the minimum duty language similar to that found in paragraph 323, *supra*, would have been used, and that the rule that a change in statutory language imports or signifies a change in meaning, requires that a meaning other than that indicated in paragraph 323, *supra*, be given to the minimum clause provision in paragraph 903, *supra*. *Kupfer Bros. Co.* v. *United States*, 7 Ct. Cust. Appls. 86; *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; and *United States* v. *Marsching*, 1 Ct. Cust. Appls. 216, are cited in support of this contention.

In construing tariff duty levying provisions, the courts, in attempting to arrive at the intention of Congress, in making changes in language, have used different expressions, and, no doubt, with different shades of meaning. In the *Post Fish Co.* case, *supra*, the court said:

\* \* \* we have uniformly held that a change of legislative language must be presumed to evidence an intent on the part of Congress to effect a change of meaning.

In *Fensterer & Voss* v. *United States*, 12 Ct. Cust. Appls. 105, referring to language in the act of 1922 different from that used in the act of 1913, this court said:

\* \* \* courts must not impute to a legislative body the doing of a useless and vain thing unless the written words will not permit of a construction which will give them a different effect.

Numerous other cases may be cited where the general rule is stated in language not materially different from that used in the decisions last above cited.

Many decisions of this court, and of other courts, however, might readily be cited where a change of language in a later enactment different from that used in a former one, was not regarded as showing a change of intent on the part of Congress. *Andrews & Co.* v. *United States*, 8 Ct. Cust. Appls. 68; *Magee* v. *United States*, 4 Ct. Cust. Appls. 443; *United States* v. *Masson*, 3 Ct. Cust. Appls. 168; *United States* v. *Wertheimer Bros.*, 2 Ct. Cust. Appls. 515.

In the *Andrews & Co.* case, *supra*, this court said:

But it is further said by counsel that the change in the language of the free list provision from "vegetable ivory in its natural state" to "tagua nuts" indicates an intention to change the character of the article admitted free. It is not every change in the terms of a statute from the one for which it is a substitute that results in a change of its general purpose. The rule is one of construction merely in any case, but even as a rule of construction it has its limitations and qualifications.

We think it worthy of note and call attention to the fact that the Tariff Act of 1922 is not an amendment to, nor a revision of the act

of 1909; nor is it the successor to the act of 1909, since a general tariff revision was made by Congress in the year 1913.

In the enactment of a tariff law, if Congress uses different language from that used by it in previous enactments, while treating the same subject matter, it is the duty of those who are called upon to determine the meaning of its provisions to proceed primarily, upon the theory that the change was not made by accident, but that it was intentional, and that by making such a change in expression Congress used the term in a different sense from that in which the former expression was used. The same rule of construction likewise is often applied to changes in arrangement, or consolidation of paragraphs. This rule is, however, not absolute, and does not compel the conclusion that a change in meaning was meant. It merely *indicates* such intention. Ofttimes the changed expression is wholly different from its predecessor, and yet the fact that they both have the same meaning, and were so intended by Congress, is too plain to admit of doubt. The rule applies where its application is not barred by more convincing considerations, and does not apply where it would lead to incongruity and confusion.

If the wording and arrangement of the different phrases and provisos in paragraph 903 were such as to render their meaning ambiguous and doubtful, the well settled rule invoked by appellants might be helpful in determining what Congress meant by the use of the words *"in addition to the above duties."* The meaning of the paragraphs seems to us to be too free from ambiguity to necessitate the application of such a rule. In fact, the meaning is so plain as to bar its application.

In determining the applicability of the rule, we think it well, also, to keep in mind the often repeated doctrine which has been invoked by the courts when called upon to construe a statute which had been revised or codified and which differed from the original act. In *Hamilton* v. *Rathbone*, 175 U. S. 414–421, also in *Holden* v. *United States*, 24 App. Cas. (D. C.) 318–335, the rule is stated in the following single observation: "prior acts may be resorted to, to solve, but not to create, an ambiguity." In the former case, the Supreme Court further said: "It is only by calling in the aid of a prior act that it becomes possible to throw a doubt upon its proper interpretation." To the same effect is *In Re Guggenheim Smelting Co.*, 126 Fed. 728, which reversed 121 Fed. 153, in which later customs case the court regarded the legislative intent, as indicated in prior acts, as controlling in construing a provision of the act of 1897. The reversal was upon the consideration that the terms of the later enactment were unambiguous.

If it were conceded that the terms of paragraph 903 are ambiguous and susceptible of construction, then the rule contended for, in this case, by appellants, would also probably have to be considered along with the rule of *pari materia,* the rule that the language of statutes upon the same or similar subjects, should have like interpretation.

In paragraph 323, in the act of 1909, if Congress had omitted the quoted phrase relating to construction, it would seem that there would be little probability of any construction being given the provisions other than the one which Congress indicated by the phrase "that the duties should be added to those to which the cotton cloth would be liable if the additional duty provision did not exist." That is exactly what the plain unambiguous terms of the paragraph under consideration mean, and it is difficult to see how any other reasonable conclusion could be reached.

The first part of the paragraph and the first proviso definitely require that the kind of cloth in controversy shall bear a duty of not less than 15 per centum plus five-sixteenths of 1 per centum for each number. That is the lowest duty that can be legally assessed against the importations, and that provision refers to cloth not printed, dyed, or colored with vat dyes. If cloth not so dyed, must bear a duty, as in the case at bar, of 25 per centum and $25\frac{5}{16}$ per centum, respectively, does it not seem clear that Congress meant that if the cloth had been vat colored it should bear a 4 per centum duty in addition thereto?

The cases of *Brown & Co., supra,* and *Matagrin, supra,* are not in point. The opinion of the board, in this case, was controlled by its decision in the case of *Fenton & Co.* v. *United States,* G. A. 8820, T. D. 40260. Its conclusions in the *Fenton* case were correct, and we agree with its decision in the case at bar, and the judgment of the Board of General Appraisers is *affirmed.*